STATE v. JOHNSON

[331 N.C. 660 (1992)]

No. 530A89

(Filed 25 June 1992)

**1. Criminal Law § 1314 (NCI4th) — murder — sentencing — plea bargain — aggravating factors not submitted — no error**

A guilty plea in a murder prosecution was not set aside even though the plea called for the State to submit only two aggravating circumstances where a careful review of the evidence presented failed to disclose any evidence to support any aggravating circumstance other than the two submitted.

**Am Jur 2d, Criminal Law §§ 481 et seq.**

**2. Criminal Law § 1352 (NCI4th) — murder — sentencing — McKoy error**

There was *McKoy* error in a capital sentencing hearing even though the jury was instructed that each juror could consider mitigating circumstances found by that juror but not the entire jury as to Issue Four, which asked whether the aggravating circumstance or circumstances were sufficiently substantial to call for imposition of the death penalty when considered with the mitigating circumstance or circumstances. The jurors were informed at three points in the written issues that they must be unanimous before considering any of the mitigating circumstances submitted and the court's oral instructions required unanimity on sixteen occasions.

**Am Jur 2d, Criminal Law § 628.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

**STATE v. JOHNSON**

[331 N.C. 660 (1992)]

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *Allen (J.B., Jr.), J.*, at the 19 September 1989 Criminal Session of Superior Court, WAKE County. Defendant's motion to bypass the Court of Appeals as to his convictions of three counts of robbery with a dangerous weapon was allowed by this Court on 10 December 1991. Heard in the Supreme Court 15 April 1992.

*Lacy H. Thornburg, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, and Steven F. Bryant, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant was charged in proper bills of indictment with first-degree murder and three counts of robbery with a dangerous weapon. He pled guilty to all charges, and after a capital sentencing proceeding, the jury recommended a sentence of death. He was sentenced to death for the first-degree murder conviction and to three consecutive sentences of terms of years for the three robbery with a dangerous weapon convictions. We find no error in the guilt-innocence phase of defendant's trial in which he entered his pleas of guilty, or in the sentencing phase on the three robbery with a dangerous weapon convictions. For *McKoy* error in the capital sentencing proceeding on the murder conviction, we vacate the sentence of death and remand for a new capital sentencing proceeding.

Only a brief summary of the facts is necessary to address defendant's assignments of error. Allen Swanger was maintenance supervisor at Tara East Apartments in Raleigh. The decedent, Jerry Powell, a young man in his twenties, worked for Swanger as his maintenance assistant. On 21 September 1988, an armed robbery occurred in the office of the apartment complex, during which Swanger and others were robbed and Powell was killed.

**STATE v. JOHNSON**

[331 N.C. 660 (1992)]

The apartment complex office was on the first floor of one of the apartments, which was also used as a model apartment. The office consisted of a leasing office in the living room at the front of the apartment and the manager's office in the dining area in the back, with a short hallway connecting them. At 12:30 p.m., Swanger was at a closet in the hallway between the two offices, making a key for a tenant. He sensed someone's presence, looked up, and saw that defendant had entered and was standing about three feet away with a sawed-off shotgun. Swanger, thinking that defendant was playing a joke, asked him whether he was serious. Defendant "said something to the effect you bet your ass." Swanger turned around and raised his hands. When defendant realized someone was in the back office, which was obscured by the open closet door, he told Swanger to summon the individual (Pamela Varsel, the apartment leasing agent) out, and Swanger complied.

Defendant "said something to the effect that someone is going to die, . . . who wants to die," and Swanger replied that he did not want to die. Defendant demanded Swanger's money, and Swanger gave him all the money from his wallet, forty dollars. Defendant was about a foot away, pointing the shotgun at Swanger. Defendant demanded that Swanger lie prone on the floor, and Swanger lay on his stomach, facing down the hallway from the back office. Defendant demanded and received money of Pamela Varsel. Defendant again asked who wanted to die, and Swanger again said that he did not want to die. When defendant demanded the money that belonged to the apartment complex, both Swanger and Varsel replied that the complex received only checks. Defendant then lowered the shotgun to Swanger's head. Defendant pulled the phone off the desk in the back office, proceeded down the hallway, and ripped a phone off the wall in the front office. Defendant rifled through the desk drawers, then started down the hallway toward the back office.

Swanger heard the bolt of the shotgun click, indicating that a shotgun shell had been chambered. From where he was lying, Swanger saw Jerry Powell through a window, walking toward the office. Once Powell was inside the office, Swanger yelled for him not to move, and Powell stopped at the beginning of the hallway. Defendant turned and pointed the shotgun at Powell's chest. Defendant said nothing to Powell, and Powell made no offensive move toward defendant. Powell looked down at the gun, looked up and

said "oh shit," and then defendant fired. Defendant stepped over Powell's fallen body and moved toward the front door.

At that time, James Halstead, another maintenance employee, entered the office. Defendant pointed the gun at Halstead's face and told Halstead to give defendant everything he had. Halstead gave defendant his wallet with seventeen dollars in it and sat down in a chair as instructed by defendant. Defendant then left the apartment office, carrying the shotgun and a purple or lavender tote bag. Swanger and Halstead felt no pulse on Powell and, after repairing one of the phones, called for police and emergency personnel.

During all these events, Shirley Poole, the apartment resident manager, was hiding under her desk in the back office. She overheard all that went on, though she could not see anything. She testified that defendant's voice was low and articulate and that defendant seemed cool and rational.

Paramedics arrived but found no sign of life in Powell's body. A Raleigh police officer found one shotgun shell on the floor. The cause of death was rapid bleeding from the liver and aorta caused by the shotgun blast, which was fired on contact with or within one inch of Powell's chest.

Other witnesses for the State connected defendant to the shotgun used in the murder and robberies, the spent shell found at the scene to the type of shotgun defendant was known to have, and defendant's fingerprints to those found at the crime scene. Witnesses also testified as to defendant's attempted flight to New York and his confession to the shooting and robberies.

Defendant offered testimony by psychologist Dr. Brad Fisher to the effect that defendant was "very disturbed," "undersocialized," and "developmentally regressed" and that defendant had made several suicide attempts. A Central Prison staff psychiatrist testified that defendant was paranoid and suffered from a severe personality disorder. A number of other mental health professionals, including Dr. Morton Meltzer, also testified. Dr. Meltzer testified, *inter alia*, that defendant was not suicidal, psychotic, depressed, paranoid, or despondent; was of average intelligence, articulate, alert, optimistic, and oriented; and "was quite intelligent from the point of view of street savvy and prison savvy." However, according

to Dr. Meltzer, defendant did suffer from a personality disorder and borderline antisocial behavior.

Dr. Adam Adams, a psychotherapist, testified that defendant admitted to "beating the system" by acting crazy and had once acted crazy in prison in order to get transferred to the mental health unit. Adams also testified that personality disorders do not cause people to commit armed robbery or murder.

There was also much evidence tending to show that defendant had been mistreated, beaten, and neglected as a youth and that he had few positive socializing experiences and a limited education.

At the close of defendant's capital sentencing proceeding, the jury, having affirmatively found the two aggravating circumstances submitted and not having found any of the eleven mitigating circumstances submitted, recommended a sentence of death.

Defendant brings forward one assignment of error in the guilt-innocence phase of his trial and nine issues relating to the capital sentencing proceeding conducted in his case. Because we vacate defendant's capital sentence and remand his case for a new capital sentencing proceeding by reason of *McKoy* error, we do not address the remainder of defendant's assigned errors regarding the capital sentencing proceeding.

## GUILT-INNOCENCE PHASE

[1] The record reveals that the court submitted two aggravating circumstances for the jury's consideration: (1) the murder was committed for pecuniary gain, and (2) the murder was part of a course of conduct in which defendant engaged that included the commission by the defendant of other crimes of violence against other persons. Relying on *State v. Case*, 330 N.C. 161, 410 S.E.2d 57 (1991), defendant first contends that this Court should set aside his guilty plea in the first-degree murder conviction because the plea bargain agreement was improper in that it called for the State to submit only two aggravating circumstances, when the prosecutor was aware of additional aggravating circumstances. We disagree.

Defendant argues that the evidence shows that after he took money from Allen Swanger and Pamela Varsel, he ordered them to lie down on the floor in the back room, and they complied. Defendant then searched for money in the front room, killed Jerry

Powell, and robbed James Halstead. Defendant contends that the confinement and restraint of Swanger and Varsel by forcing them to lie down and remain on the floor of the back room was not an inherent, inevitable part of the robberies committed against them. According to defendant, the evidence supported a finding that defendant was guilty of second-degree kidnapping of Swanger and Varsel. N.C.G.S. § 14-39(a)(1) (Supp. 1991). Therefore, says defendant, the evidence supported submission of the additional aggravating circumstance that defendant killed Jerry Powell while engaged in the commission of, or flight after, the separate crime of second-degree kidnapping. N.C.G.S. § 15A-2000(e)(5) (1988). Moreover, defendant argues that the evidence showed that he did not rob Powell and that he shot Powell because Powell kept walking toward him after being warned to stop. This evidence, argues defendant, would support the submission of the aggravating circumstance that, because he feared that Powell was trying to stop him, defendant killed Powell to avoid or prevent a lawful arrest. N.C.G.S. § 15A-2000(e)(4) (1988). While these are ingenious arguments, we conclude that neither of these purported additional aggravating circumstances is supported by the evidence, and thus they were not improperly withheld from the jury's consideration.

It is well settled that the prosecution in a capital case has no power to withhold from the jury's consideration any aggravating circumstance that is supported by the evidence. *State v. Silhan,* 302 N.C. 223, 275 S.E.2d 450 (1981). Every aggravating circumstance that the evidence supports must be submitted for the jury's consideration in determining its recommendation as to whether the defendant will receive a sentence of life or death. *State v. Lloyd,* 321 N.C. 301, 364 S.E.2d 316, *judgment vacated on other grounds,* 488 U.S. 807, 102 L. Ed. 2d 18, *on remand,* 323 N.C. 622, 374 S.E.2d 277 (1988), *judgment vacated on other grounds,* 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand,* 329 N.C. 662, 407 S.E.2d 218 (1991); *see also State v. Johnson,* 298 N.C. 47, 257 S.E.2d 597 (1979) (trial judge must refuse to accept a negotiated plea calling for the State to withhold an aggravating circumstance supported by the evidence).

Defendant's reliance on *Case* is misplaced. In *Case,* the defendant pled guilty to felony murder. Pursuant to the plea bargain agreement, the prosecutor agreed to submit only one aggravating circumstance, that the murder was especially heinous, atrocious, or cruel, although he was well aware that the evidence would

have supported another, and perhaps two, additional aggravating circumstances. Here, unlike *Case*, there was a genuine lack of evidence of any aggravating circumstances other than the two that were submitted to and found by the jury. Contrary to defendant's argument, all the evidence showed that the murder occurred during the course of the robbery and not during a kidnapping or to avoid apprehension.

The record reflects that both the prosecutor and the trial court were aware of the requirement of submitting for the jury's consideration every aggravating circumstance that is supported by the evidence. Prior to the trial court's acceptance of the plea bargain agreement, in which the State agreed to submit only the aggravating circumstances that the murder was for pecuniary gain and that the murder was part of a course of conduct that included violence against others, the prosecutor stated:

> I would like to put on the record that the State contends that these are the only aggravating circumstances for which there is evidence and I would like for these attorneys to put on the record, if they do in fact feel so, that they feel that this is in their client's best interest, this plea.

Some ten days later, after hearing the evidence and at the conclusion of the evidence presented at the sentencing hearing, the trial court announced that it would submit the two aggravating circumstances that were "based on the evidence" and "based on the plea arrangement." Our careful review of the transcript of the evidence presented fails to disclose any evidence to support any aggravating circumstance other than the two that were submitted.

CAPITAL SENTENCING PROCEEDING

[2] Defendant contends that the trial court's sentencing instructions with regard to proposed mitigating circumstances, considered in their totality, violate *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 327 N.C. 31, 394 S.E.2d 426 (1990). We agree. Prior to the charge conference, defendant submitted written requests that would have eliminated the unanimity instructions from the jury instructions as to Issues Two and Three. At the charge conference, defense counsel repeated the request. The trial court stated that it would instruct the jury that, with respect to Issue Four only, each juror could consider individual mitigating

circumstances found by that juror, though not found unanimously by the entire jury.

The following issues as to punishment were submitted to and answered by the jury:

Issue One:

> Do you unanimously find from the evidence, beyond a reasonable doubt, the existence of one or more of the following aggravating circumstances?

> ANSWER:  __YES__

> . . . .

> (1) Was this murder committed for pecuniary gain?

> ANSWER:  __YES__

> (2) Was this murder part of a course of conduct in which the defendant engaged and did that course of conduct include the commission by the defendant of other crimes of violence against other persons?

> ANSWER:  __YES__

IF YOU ANSWERED ISSUE ONE "NO," SKIP ISSUES TWO, THREE, AND FOUR AND INDICATE LIFE IMPRISONMENT UNDER "RECOMMENDATION AS TO PUNISHMENT" ON THE LAST PAGE OF THIS FORM. IF YOU ANSWERED ISSUE ONE "YES," PROCEED TO ISSUE TWO.

Issue Two:

> Do you unanimously find from the evidence the existence of one or more of the following mitigating circumstances?

> ANSWER:  __NO__

BEFORE YOU ANSWER ISSUE TWO, CONSIDER EACH OF THE FOLLOWING MITIGATING CIRCUMSTANCES. IN THE SPACE AFTER EACH MITIGATING CIRCUMSTANCE, WRITE "YES" IF YOU UNANIMOUSLY FIND THAT MITIGATING CIRCUMSTANCE BY A PREPONDERANCE OF THE EVIDENCE. WRITE "NO" IF YOU DO NOT UNANIMOUSLY FIND THAT MITIGATING CIRCUMSTANCE BY A PREPONDERANCE OF THE EVIDENCE.

IF YOU WRITE "YES" IN ONE OR MORE OF THE SPACES AFTER THE FOLLOIWNG [SIC] MITIGATING CIRCUMSTANCES, WRITE "YES" IN

THE SPACE AFTER ISSUE TWO AS WELL. IF YOU WRITE "NO" IN ALL OF THE SPACES AFTER THE FOLLOWING MITIGATING CIRCUMSTANCES, WRITE "NO" IN THE SPACE AFTER ISSUE TWO.

(1) This murder was committed while the defendant was under the influence of mental or emotional disturbance.

ANSWER: __No__

(2) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

ANSWER: __No__

(3A) Could the defendant never develop a father-son relationship with his father, and do you deem this to have mitigating value?

ANSWER: __No__

(3B) Was the defendant deprived of the family nurturing necessary to properly develop, and do you deem this to have mitigating value?

ANSWER: __No__

(3C) Did the defendant not resist arrest, and do you deem this to have mitigating value?

ANSWER: __No__

(3D) Did the defendant voluntarily confess to the crimes after being warned of his right to remain silent and without the assistance of counsel, and do you deem this to have mitigating value?

ANSWER: __No__

(3E) Did the defendant cooperate with the police upon his arrest, and do you deem this to have mitigating value?

ANSWER: __No__

(3F) Was the defendant's mental or emotional age significantly below that of persons of his chronological age, and do you deem this to have mitigating value?

ANSWER: __No__

(3G) Are psychiatric care and treatment available to the defendant in prison, and do you deem this to have mitigating value?

ANSWER: No

(3H) Is the defendant remorseful for the crimes, and do you deem this to have mitigating value?

ANSWER: No

(4) Any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value.

ANSWER: No

. . . .

Issue Four:

Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by you? When making this final balance in the fourth issue, each juror may consider any circumstance or circumstances in mitigation that the juror determined to exist by the preponderance of the evidence whether or not that circumstance is found to exist unanimously by the jury in Issue Two.

ANSWER: YES

At three points in the written issues, the jurors were informed that they must be unanimous before considering any of the mitigating circumstances submitted. Also, on some sixteen occasions, the court's oral instructions required unanimity as to the proposed mitigating circumstances. Although the oral and written instructions on the fourth issue were modified to allow a juror to consider a mitigating circumstance not found unanimously by the jury, the jury failed to find any of the eleven mitigating circumstances presented.

The State concedes that there was error in the instructions pursuant to the holding in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369. In addition, the State concedes that it is unable to distinguish this Court's decisions in *State v. McKoy*, 327 N.C. 31, 394 S.E.2d 426, *State v. Huff*, 328 N.C. 532, 402 S.E.2d

577 (1991), and *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991); the State also concedes that it cannot meet its burden of establishing that the error was harmless beyond a reasonable doubt. *See State v. Brogden*, 329 N.C. 534, 407 S.E.2d 158 (1991).

To demonstrate the validity of the State's concession in this regard, we need only examine the evidence before the jury with regard to the statutory mitigating circumstance of mental or emotional disturbance at the time this murder was committed, N.C.G.S. § 15A-2000(f)(2) (1988), a circumstance presumed to have mitigating value if found. A reasonable juror could have found the existence of this mitigating circumstance. Dr. Brad Fisher testified that based on his evaluation of defendant, he was of the opinion that defendant is a "severely disturbed person." He and two other mental health experts, Dr. James A. Smith and Dr. Bob Rollins, testified, in effect, that defendant has a serious personality disorder that impairs his capacity to control his impulses, anger, and conduct and that leads to episodes of destructive conduct and paranoid distrust of other people. He also has a seizure disorder that aggravates his problems by lowering his already low self-esteem. These expert witnesses agreed that physical abuse by his alcoholic father during childhood contributed to defendant's mental disorder. Dr. Smith testified that defendant's emotional age is thirteen years old. Dr. Rollins testified that defendant's reasoning and overall intellectual ability are below average. Dr. Fisher agreed that defendant's intellectual ability is below average and that his emotional characteristics are adolescent in nature. Given this evidence, we conclude that the sentencing proceeding was constitutionally infirm in that we cannot conclude beyond a reasonable doubt that the erroneous instruction did not prevent one or more jurors from finding the mitigating circumstance to exist.

As other alleged errors in the sentencing phase are unlikely to recur at a new capital sentencing proceeding, and because defendant's preservation issues have previously been determined contrary to defendant's contention, we do not address them.

In summary, we find no error in the guilt-innocence phase of defendant's trial. We do, however, find prejudicial *McKoy* error in the capital sentencing proceeding. Therefore, we vacate the sentence of death and remand the case to the Superior Court, Wake County, for a new capital sentencing proceeding on the first-degree murder conviction. We find no error in defendant's convic-

tions and sentences as to the three robbery with a dangerous weapon counts.

No. 88CRS60405, first-degree murder: guilt phase: no error; sentencing phase: death sentence vacated, remanded for new capital sentencing proceeding.

No. 88CRS66404, robbery with a dangerous weapon: no error.

No. 88CRS66405, robbery with a dangerous weapon: no error.

No. 88CRS66406, robbery with a dangerous weapon: no error.