STATE OF NORTH CAROLINA v. GEORGE FRANKLIN HEATWOLE III

No. 119A89

(Filed 18 December 1992)

**1. Appeal and Error § 75 (NCI4th)— murder—guilty plea—appeal**

A defendant who pled guilty to first degree murder, kidnapping, assault, and discharging a firearm into an occupied building waived all nonjurisdictional errors insofar as they might have affected the guilt proceedings.

**Am Jur 2d, Appeal and Error § 271; Criminal Law § 490.**

**2. Kidnapping and Felonious Restraint § 14 (NCI4th)— guilty plea—factual basis—release when kidnapper cornered and outnumbered**

There was a factual basis for defendant's plea of guilty to first degree kidnapping where the victim (Garcia) testified that defendant handcuffed her and forced her to accompany him to his parents' house; she was with him when he shot two of his victims; she asked defendant to remove her handcuffs because her arm was bleeding and defendant directed his father to go to the truck for the keys; defendant looked out the sidelights by the door and said he thought someone was out there; defendant's father opened the door while defendant was working on the handcuffs and defendant said, "I'll let that son-of-a-bitch go"; once the handcuffs were removed, defendant put two more bullets in his gun, saying

one was for Garcia and one was for him; Garcia told defendant she did not want to die and to give her the gun; she then threw the gun out the door; and defendant hugged her, said he liked her a lot, and said "I'm sending Kim out." Although defendant argues that his release of the victim was voluntary and that sending her into a yard full of police was tantamount to release in a safe place, releasing a kidnap victim when the kidnapper is aware that he is cornered and outnumbered by law enforcement officials is not voluntary and sending her out into the focal point of their weapons is not release in a safe place.

**Am Jur 2d, Abduction and Kidnapping §§ 1, 11, 23; Criminal Law § 489.**

**. Criminal Law § 1352 (NCI4th) — McKoy error — prejudicial**

There was prejudicial *McKoy* error in a murder prosecution where the court instructed the jury that they must unanimously find each mitigating circumstance and the jury found two aggravating circumstances but none of the seven mitigating circumstances. Although the State contends that any prejudice was eradicated by the instruction "Do you unanimously find beyond a reasonable doubt the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the death penalty when considered with the mitigating circumstance or circumstances present from the evidence?", it could not be concluded beyond a reasonable doubt that the erroneous unanimity requirement did not prevent one or more jurors from finding one or more of the submitted mitigating circumstances. Nor could it be concluded that the results would have been the same had one or more of the submitted mitigating circumstances been found and considered by one or more jurors in arriving at defendant's sentence.

**Am Jur 2d, Homicide § 514.**

**4. Criminal Law § 1273 (NCI4th) — Fair Sentencing Act — honorable discharge from military — not found — contradictory evidence**

The trial court did not err when sentencing defendant for kidnapping, assault, and discharging a firearm into an occupied building by not finding the statutory mitigating factor

STATE v. HEATWOLE

[333 N.C. 156 (1992)]

that defendant had been honorably discharged from military service where contradictory evidence had been presented in a pretrial hearing regarding whether defendant should continue to be shackled. The sentencing court, having heard this testimony, was free to consider it as evidence conflicting with defendant's evidence on the honorable discharge issue. N.C.G.S. § 15A-1340.4(a)(2)o.

**Am Jur 2d, Criminal Law §§ 527, 598, 599; Homicide § 552.**

Justice LAKE did not participate in the consideration or decision of this case.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of death entered by Freeman, J., at the 20 February 1989 Session of Superior Court, Moore County. On 24 August 1990 the Supreme Court allowed defendant's motion to bypass the Court of Appeals on appeals from related convictions for first-degree kidnapping, assault with a deadly weapon with intent to kill inflicting serious injury, assault with a deadly weapon, and discharging a firearm into an occupied building. Heard in the Supreme Court 9 September 1991.

*Lacy H. Thornburg, Attorney General, by Joan Herre Byers, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, and Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

EXUM, Chief Justice.

At the close of the State's evidence defendant entered pleas of guilty to two counts of murder in the first degree and to one count each of first-degree kidnapping, assault with a deadly weapon with intent to kill inflicting serious injury, assault with a deadly weapon, and discharging a firearm into an occupied building. After a capital sentencing hearing the jury recommended death in the two murder cases. The sentencing court imposed terms totalling eighty years for the noncapital offenses. We find prejudicial error under *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), in the sentencing phase of the murder cases entitles defendant to a new sentencing hearing and that error in sentencing for

the noncapital offenses under N.C.G.S. § 15A-1340.4 requires remand for resentencing for those offenses.

Evidence presented by the State at defendant's trial tended to show the following:

At about 11 p.m. on 26 February 1988, defendant went to the home of his former girlfriend, Kim Chavis Garcia. There he shot at Garcia's sister, Vicky Chavis. The shot missed Chavis, but she fell down, feigning death. Garcia and others in the house bolted for the bedroom. Defendant fired two or three shots at two men, Ricky Cummings and Donald Locklear, who were attempting to escape through the bedroom window. One shot wounded Cummings in the left leg below the knee.

Defendant handcuffed Garcia and, taking her with him, drove to the Woodlake subdivision where his father and stepmother lived. At the entrance gate the security guard Edgar John Garrison waved defendant through; but defendant stopped, rolled down the window, and shot Garrison twice, fatally wounding him.

At his father's house defendant put the pistol to his father's head. When defendant's stepmother, Alta Hamilton Heatwole, came out of the bedroom, defendant shot her twice. She fell and made her way back into the bedroom. Defendant followed her to the bedroom where he kicked her several times and shot her twice in the head at close range, fatally wounding her.

When ten law enforcement officers surrounded the front door with their guns drawn, defendant's father ran out the front door with his hands up. Defendant removed the handcuffs from Garcia, gave her the pistol, and sent her out of the house. Garcia either dropped the pistol on police orders or threw the pistol out the door before she exited. Defendant followed Garcia out, lay down, and was arrested.

I.

[1] Defendant raises a number of issues which, but for his plea of guilty on all charges, would have been available for consideration on appeal as affecting both the guilt and sentencing proceedings of this capital prosecution. By his guilty pleas, provided they were properly entered, defendant has waived all nonjurisdictional errors that might have occurred insofar as they might have affected the guilt proceedings. *State v. Caldwell,* 269 N.C. 521, 526, 153 S.E.2d

34, 37-38 (1967). We need discuss, therefore, only those assignments of error relating to the guilty pleas themselves and those necessary to dispose of the appeal of the sentencing proceeding.

## II.

[2] Regarding his guilty pleas defendant's only contention on appeal is that the trial court erred in concluding there was a factual basis for defendant's plea of guilty to first-degree kidnapping; therefore, this plea should not have been accepted.

Under N.C.G.S. § 15A-1022(c):

The judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea. This determination may be based upon information including but not limited to:

(1) A statement of the facts by the prosecutor.

(2) A written statement of the defendant.

(3) An examination of the presentence report.

(4) Sworn testimony, which may include reliable hearsay.

(5) A statement of facts by the defense counsel.

Defendant specifically contends there is no factual basis for concluding the kidnap victim, Garcia, "was not released by the defendant in a safe place or had been seriously injured or sexually assaulted," N.C.G.S. § 14-39(b) (1986), either one of which is a requisite element of first-degree kidnapping.

Garcia testified that defendant handcuffed her and forced her to accompany him to his parents' house. She was with him when he shot Garrison and his stepmother. Garcia asked defendant to remove the handcuffs because her arm was bleeding, and defendant directed his father to go to the truck for the keys. When his father returned with the keys, defendant, who was looking out the sidelights by the front door, said he thought somebody was out there. Mr. Heatwole went out the open door while defendant was working on Garcia's handcuffs. Defendant said, "I'll let that son-of-a-bitch go." But once Garcia's handcuffs were removed, defendant put two more bullets in his gun, saying one was for her and one was for him. Garcia told defendant she did not want to die and to give her the gun. When he did, she threw it out the

STATE v. HEATWOLE

[333 N.C. 156 (1992)]

door. Defendant hugged her, said he liked her a lot, and said, "I'm sending Kim out."

Defendant argues his release of Garcia was voluntary[1] and that sending her into a yard full of police was tantamount to release in a "safe place." The State argues that releasing a kidnap victim when the kidnapper is aware he is cornered and outnumbered by law enforcement officials is not "voluntary" and that sending her out into the focal point of their weapons is not a "safe place." We agree with the State's position. *See State v. Jerrett*, 309 N.C. 239, 263, 307 S.E.2d 339, 352 (1983) (evidence sufficient to permit the jury reasonably to infer victim was rescued by the presence and intervention of police officer). Inasmuch as there was a factual basis for each element of the offense, there is no reason to upset defendant's guilty plea to first-degree kidnapping on the ground urged by defendant.

## III.

**[3]** With regard to the sentencing proceeding, defendant contends there was reversible error under *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). We agree.

At defendant's sentencing proceeding the jury found two aggravating circumstances: (1) defendant had previously been convicted of a felony involving the use of violence to the person and (2) the murder was part of a course of conduct that included commission by defendant of other crimes of violence against other persons. *See* N.C.G.S. § 15A-2000(e)(3) and (11) (1988). The jury found none of seven nonstatutory mitigating circumstances submitted for its consideration.

In its jury charge on sentencing, the trial court instructed the jurors that they must unanimously find each mitigating circumstance submitted under Issue Two on the Issues and Recommendations as to Punishment form. Issue Two asked: "Do you unanimous-

---

1. In *State v. Jerrett*, 309 N.C. 239, 262, 307 S.E.2d 339, 351 (1983), this Court observed: "While it is true that N.C.G.S. § 14-39(b) does not expressly state that the defendant must voluntarily release the victim in a safe place, we are of the opinion that a requirement of 'voluntariness' is inherent in the statute. G.S. 14-39(b) provides that in order for the offense to constitute kidnapping in the second degree, the person kidnapped must be released 'in a safe place *by the defendant* . . . .' (emphasis added). This implies a conscious, willful action on the part of the defendant to assure that his victim is released in a place of safety."

STATE v. HEATWOLE

[333 N.C. 156 (1992)]

ly find from the evidence the existence of one or more of the following [seven] mitigating circumstances?" The jury was also instructed to answer "no" to any mitigating circumstance not unanimously found. The State concedes these instructions constitute constitutional error under *McKoy*, but contends such error was harmless beyond a reasonable doubt.

The State first argues that the trial court's instruction on Issue Four eradicated any prejudice that might have arisen from its instruction on Issue Two. Issue Four asked: "Do you unanimously find beyond a reasonable doubt the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the death penalty when considered with the mitigating circumstance or circumstances present from the evidence?" The trial court proceeded to instruct the jury that in its consideration of "any mitigating circumstances present from the evidence," each juror could include in the final balancing any circumstance he or she considered to have been proved by a preponderance of the evidence, "[e]ven if the jury has not found unanimously the existence of [that] mitigating circumstance."

We rejected this argument in *State v. Johnson*, 331 N.C. 660, 417 S.E.2d 483 (1992), and for the reasons given there, we also reject it here.

The seven mitigating circumstances submitted to the jury were: (1) defendant's conduct was affected by his bad treatment while in prison in the State of Texas; (2) defendant was honorably discharged from the United States Marine Corps; (3) defendant earned a high school equivalency certificate; (4) defendant has been trustworthy and truthful in his relationship with Mr. Larry Davis; (5) defendant has been a decent person in his relationship with Miss Lisa Cox; (6) defendant has always acted like a gentleman in his relationship with Mrs. Larrie Marie Garner; (7) any other circumstance or circumstances arising from the evidence which the jury deems to have mitigating value. Each of the first six circumstances was supported by some evidence in the record; indeed the trial court peremptorily instructed the jury as to each that "all of the evidence tends to show [that particular mitigating circumstance,] and [t]here was no evidence to the contrary." Nevertheless, the jury found none of these mitigating circumstances to exist.

STATE v. HEATWOLE

[333 N.C. 156 (1992)]

We cannot conclude beyond a reasonable doubt that the erroneous unanimity requirement did not prevent one or more jurors from finding one or more of the submitted mitigating circumstances. Nor can we conclude beyond a reasonable doubt that, had one or more of the submitted mitigating circumstances been found and considered by one or more jurors in arriving at defendant's sentence, the results would have been the same. *See State v. Johnson*, 331 N.C. at 670, 417 S.E.2d at 489; *State v. Brown*, 327 N.C. 1, 30, 394 S.E.2d 434, 451 (1990). Consequently, we set aside the sentences of death and remand for a new sentencing hearing.

IV.

[4] Defendant next contends he is entitled to be resentenced for all felony convictions governed by the Fair Sentencing Act, N.C.G.S. § 15A-1340.1 through -1340.7 (1988), because the court sentenced him to terms in excess of the presumptive term for each charge without finding the statutory mitigating factor that defendant had been honorably discharged from military service. N.C.G.S. § 15A-1340.4(a)(2)o (1988).

Before it imposes a sentence exceeding the presumptive term, the sentencing court must consider all statutory mitigating factors that are supported by the evidence. *State v. Pigott*, 331 N.C. 199, 214, 415 S.E.2d 555, 563 (1992). The sentencing court is obligated to find a statutory mitigating factor when the evidence supporting that factor is uncontradicted and manifestly credible. *Id.*, 415 S.E.2d at 564.

> [W]hen a defendant argues . . . that the trial court erred in failing to find a mitigating factor proved by uncontradicted evidence, . . . [h]e is asking the court to conclude that "the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn," and that the credibility of the evidence is "manifest as a matter of law."

*State v. Jones*, 309 N.C. 214, 219-20, 306 S.E.2d 451, 455 (1983) (quoting *North Carolina National Bank v. Burnette*, 297 N.C. 524, 536-37, 256 S.E.2d 388, 395 (1979) ). *See also State v. Pigott*, 331 N.C. at 214, 415 S.E.2d at 564. The sentencing court is accorded wide latitude in determining the existence of mitigating factors, for it "observes the demeanor of the witnesses and hears the testimony." *State v. Ahearn*, 307 N.C. 584, 596, 300 S.E.2d 689, 697 (1983). "To show that the trial court erred in failing to find

STATE v. HEATWOLE

[333 N.C. 156 (1992)]

a mitigating factor, the evidence must show conclusively that this mitigating factor exists, i.e., no other reasonable inferences can be drawn from the evidence." *State v. Canty*, 321 N.C. 520, 524, 364 S.E.2d 410, 413 (1988).

During the sentencing phase of his capital trial defendant, who was not under oath, stated that he had been honorably discharged from the Marine Corps; and he introduced into evidence an unauthenticated exhibit which presumably appeared to be a certificate of honorable discharge from the Marine Corps.[2]

Evidence casting doubt upon the credibility of the defendant's assertion and the authenticity of defendant's exhibit was before the trial court in testimony presented in a pretrial hearing regarding whether defendant should continue to be shackled. The State's witness testified as follows:

Q. Did Mr. Heatwole tell you what he did when he was in California stationed in the [M]arines?

A. Yes, sir.

Q. What did he tell you?

A. Jeff was I guess you call it kicked out of the Marines or dishonorably discharged, whatever you call it. I never was in the Service.

DEFENDANT: Honorably discharged.

A. Jeff and I were talking. What he told me was he hit the Commander, whatever you call him. He was on R duty and hit the head guy of the base, or whatever you call him.

Given the contradictory nature of the evidence before the sentencing court and given the latitude accorded the trial court in assessing such evidence,[3] we hold that the court did not err in

---

2. The original exhibit was not brought forward in the record on appeal. A photocopy of the exhibit is included in the appendix to the State's brief.

3. During the sentencing phase of defendant's capital trial, the trial court instructed the jury that evidence of defendant's honorable discharge from the Marine Corps was uncontradicted by the prosecution. This instruction was correct because the jury did not hear the pretrial testimony that contradicted the veracity of the certificate. The sentencing court, however, having heard this testimony, was free to consider it as evidence conflicting with defendant's evidence on the honorable discharge issue.

STATE v. HEATWOLE

[333 N.C. 156 (1992)]

failing to find the statutory mitigating factor that defendant was honorably discharged from military service.

88CRS1335, 88CRS1337—Death Sentences vacated and the cases remanded for a new sentencing proceeding.

88CRS1336 (first-degree kidnapping)—no error.

88CRS1338 (assault with a deadly weapon with intent to kill inflicting serious injury)—no error.

88CRS1339 (assault with a deadly weapon with intent to kill)— no error.

88CRS1340 (discharging firearm into occupied property)—no error.

Justice Lake did not participate in the consideration or decision of this case.