STATE OF NORTH CAROLINA v. JOHN RICHARD SUTCLIFF

No. 382A87

(Filed 6 April 1988)

**1. Kidnapping § 1— first degree kidnapping—failure to release victim in safe place—evidence sufficient**

The evidence was sufficient to permit a jury reasonably to infer that the victim was not released by defendant in a safe place within the meaning and intent of N.C.G.S. § 14-39(b) where the evidence tended to show that the victim was released at approximately 5:00 a.m. on a mid-January morning at an intersection nine-tenths of a mile from a shopping mall; the victim was relatively new to the area, was very disoriented, and did not know where she was; the victim saw car headlights indicating that it was dark at the time; she found no protective shelter or source of assistance until she reached the mall almost a mile away, and then had to wait alone until an officer arrived several minutes later; and, while en route to the mall, the victim feared for her safety and thus hid whenever she saw headlights or heard cars.

**2. Robbery § 4.3— armed robbery—idea originating with victim—evidence sufficient**

The trial court did not err in a prosecution for armed robbery, kidnapping, and first degree sexual offense by denying defendant's motions to dismiss the armed robbery charge despite evidence that, after defendant initially dragged the victim to his truck, the victim said to defendant, "Do you want to get the money? You can get the money and go." The evidence tended to show a continuous transaction in which defendant committed a sexual offense upon the victim and robbed the victim's employer; both offenses were effectuated by the use of a dangerous weapon, a knife; the jury could reasonably infer that defendant intended permanently to deprive the victim's employer of the bills he took from the cash register; and a rational factfinder could conclude from the evidence presented that the victim parted with her employer's property only because she believed her life was in danger or threatened and that the victim suggested the robbery as a diversionary tactic designed to save herself from death or bodily harm.

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) (1986) from a judgment of life imprisonment entered by *Tillery, J.,* on 2 April

1987 in Superior Court, NEW HANOVER County. On 22 September 1987 we allowed defendant's motion to bypass the Court of Appeals in appeals from additional convictions for which the trial court entered judgments of imprisonment for terms of years. Heard in the Supreme Court 14 March 1988.

*Lacy H. Thornburg, Attorney General, by Norma S. Harrell, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Leland Q. Towns, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was charged with first degree sexual offense, first degree kidnapping, and armed robbery. The jury returned verdicts of guilty on all charges. The verdict on the first degree kidnapping charge was grounded on "[f]ailure to release [the victim] in a safe place and sexual assault on [the victim]." In entering judgment, the trial court considered only the finding that the victim was not released in a safe place. The court sentenced defendant to life imprisonment on the sexual offense charge, thirty years imprisonment (consecutive) on the kidnapping charge, and twenty years imprisonment (consecutive) on the armed robbery charge.

The State's evidence, in pertinent part, showed the following:

On 14-15 January 1987, the twenty year old female victim was working the night shift at the Scotchman Store in Wrightsville Beach. She had only lived in Wrightsville Beach since late August 1986.

At about 4:15 a.m. defendant entered the store. The victim asked if he needed anything, and he "sort of shook his head."

A short while later defendant purchased some cigarettes and left the store. He soon returned and asked the victim if she had a box. The victim gave him a box. She then turned her back to make coffee, and when she turned around again she was startled to find defendant "right there." She walked up to a counter, and defendant grabbed her from behind. He said: "Be quiet; don't scream; don't struggle; I am crazy or [sic] I will hurt you if you don't do what I say." At this point defendant had in his hand a

knife with a blade approximately four inches long. The victim grabbed defendant's hand, and the handle of the knife broke off.

Defendant then dragged the victim to his truck. She said to him: "Do you want to get the money? You can get the money and go." They went back inside, and the victim opened the cash register. The register receipt indicated that this occurred at 4:19 a.m. Defendant grabbed all the bills out of the drawer and put them in his pocket. He held the knife against the victim throughout this endeavor.

Defendant then dragged the victim back to his truck. He made her get in, and he locked the door on the passenger's side. The knife was "poking . . . against" the victim's side under her arm. Defendant kept the knife in her side while he was driving. He told the victim that he was crazy and she should do what he said.

Eventually the truck stopped. Defendant told the victim to turn on her stomach and "do to me what you do to your boyfriends." At the time he "was pulling down, unzipping his pants." He had the knife in the victim's back. At defendant's insistence, the victim "gave him oral sex."

After some conversation, defendant started the truck. When the victim sat up, she was very disoriented and did not recognize anything. When defendant let her out of the truck, she did not know in which direction she should go. She later identified the place where defendant let her off as "Rogersville Road and Wrightsville Avenue."

The victim ran until she reached a shopping mall nine-tenths of a mile away. She stopped to hide whenever she saw headlights or heard a car, because she did not know whether defendant was coming back to get her. When she reached the mall, she called the 911 emergency number, and the operator sent an officer from the sheriff's department. The officer arrived at approximately 5:15 a.m. The victim told the officer that defendant had "made [her] suck him." The victim went to a hospital for an examination, which revealed a scratch under her right arm where she testified defendant had held the knife.

When the investigating officers showed the victim defendant's truck, she identified it as the vehicle in which she was

taken from the store. She also identified defendant as the driver.

In the early morning hours of 15 January, Thomas Joseph Whitmore, an employee of the New Hanover County Sheriff's Department, received a call from his supervisor describing the vehicle involved in the foregoing incident. He later observed a vehicle fitting that description. When he caught up with the vehicle and turned on his blue lights and siren, the vehicle "just accelerated and sped and continued on." Whitmore gave chase, and ultimately the vehicle collided with another vehicle. When Whitmore approached the wrecked vehicle, no one was there. A license check revealed that defendant owned the vehicle.

When defendant was taken into custody the night of 15 January, he told the arresting officer that he had never done "anything like this" before, that he had a "real bad drug problem," and that "anybody in their right mind that would have done anything like that would have worn a mask." He subsequently told investigating officers that he "would not have hurt the girl," that he did not know why he had done what he did, and that he "was doing a bunch of crazy things at that time because he was on drugs."

The Wrightsville Beach Chief of Police, who had special training and experience in fingerprint lifting and comparison, testified that a latent right thumb print on a knife handle found on the floor of the store matched defendant's right thumb print. He also testified that the victim was able to indicate the place to which she thought defendant had taken her, and that tire impressions at that locale appeared similar to the tread on the tires of defendant's truck.

[1] Defendant contends that the trial court erred in denying his motions to dismiss the first degree kidnapping charge. He does not argue that the evidence was insufficient to permit a finding that he kidnapped the victim; instead, he contends that the State failed to prove that he did not release the victim in a safe place, which was the sole basis on which the trial court entered judgment for first degree, rather than second degree, kidnapping. *See* N.C.G.S. § 14-39(b) (1986).

"In resolving this question, we must be guided by the familiar rule that the evidence must be considered in the light

most favorable to the State, giving the State every reasonable inference which may be drawn therefrom." *State v. Jerrett*, 309 N.C. 239, 263, 307 S.E. 2d 339, 352 (1983). So considered, evidence relevant to the question presented tends to show that at approximately 5:00 o'clock on a mid-January morning the victim was released at an intersection located nine-tenths of a mile from a shopping mall. She was relatively new to the area, was very disoriented, and did not know where she was. She saw car headlights, thus indicating that it was dark at the time. She found no protective shelter or source of assistance until she reached a shopping mall almost a mile away, and even then had to wait alone until an officer arrived several minutes later. While en route to the mall, she feared for her safety and thus hid whenever she heard cars or saw headlights.

We hold that this evidence permits a jury reasonably to infer that the victim was not "released by the defendant in a safe place" within the meaning and intent of that phrase as used in N.C.G.S. § 14-39(b). This assignment of error is thus overruled.

[2] Defendant further contends that the trial court erred in denying his motions to dismiss the armed robbery charge. The evidence showed that after defendant initially dragged the victim to defendant's truck, the victim said to defendant: "Do you want to get the money? You can get the money and go." Defendant argues from this evidence that the "idea of taking the money originated with [the victim] and that she voluntarily consented to giving the money to the defendant."

*State v. Siler*, 292 N.C. 543, 234 S.E. 2d 733 (1977), also presented facts suggesting that the idea of a robbery originated with the victim rather than the defendant. The defendant there was convicted of first degree rape and armed robbery. After completion of the rape, but while defendant was still armed with a gun, the victim told the defendant that her money was on her desk. Subsequently, the victim's pocketbook and billfold were found lying on the floor, and her money was missing. We held these facts, and the inferences arising therefrom, sufficient to withstand a motion for nonsuit of an armed robbery charge. *Id.* at 555-56, 234 S.E. 2d at 741-42.

Our Court of Appeals also faced similar facts in *State v. Martin*, 47 N.C. App. 223, 267 S.E. 2d 35, *appeal dismissed and disc.*

*rev. denied,* 301 N.C. 238, 283 S.E. 2d 134 (1980). There, when the victim saw that the defendant had a gun, he offered the defendant his money and his car. He "kept telling him to take the money." *Id.* at 226, 267 S.E. 2d at 37. After the victim placed a wallet containing money on the seat of his car, defendant forced the victim into the trunk. He drove for a distance, then put the victim out. When the car was found, the wallet was gone. The court held that the elements of armed robbery of the wallet were satisfied. *Id.* at 228-29, 267 S.E. 2d at 38-39.

The fact that the idea of taking money from the victim's employer may have originated with the victim rather than the defendant thus does not necessarily remove the armed robbery issue from the jury.

> Armed robbery is the taking of personal property from the person or presence of another, by the use or threatened use of a dangerous weapon, whereby the victim's life is endangered or threatened. . . .
>
> . . . .
>
> . . . [W]hen the circumstances of the alleged armed robbery reveal an intent to permanently deprive the owner of his property and a taking effectuated by the use of a dangerous weapon, it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use of force can be perceived by the jury as constituting a single transaction.

*State v. Rasor,* 319 N.C. 577, 587, 356 S.E. 2d 328, 334-35 (1987) (citations omitted). The evidence here, viewed in the light most favorable to the State as required, *State v. Jerrett,* 309 N.C. 236, 263, 307 S.E. 2d 339, 352, tended to show a continuous transaction in which the defendant committed a sexual offense upon the victim and robbed her employer. Both offenses were effectuated by the use of a dangerous weapon, a knife. The jury could reasonably infer that defendant intended permanently to deprive the victim's employer of the bills he took from the employer's cash register. A rational factfinder could conclude from the evidence presented that the victim parted with her employer's property only because she believed her life was endangered or threatened, and that she suggested the robbery as a diversionary tactic designed to save

her from death or bodily harm. Surrender of property under such circumstances is not consensual. This assignment of error is thus overruled.

No error.