STATE OF NORTH CAROLINA v. ROBERT WARREN PRATT

No. COA01-1268

(Filed 3 September 2002)

**1. Criminal Law— competency to stand trial—reluctance to produce witnesses**

The trial court did not abuse its discretion in a rape and kidnapping prosecution by finding defendant competent to stand trial where a psychiatrist testified that defendant's paranoid delusions prevented him from effectively assisting his defense because he believed that anyone attempting to assist him would be hindered by a curse against him. The trial court could properly conclude from evidence presented at the hearing that defendant's reluctance to provide the names of potential witnesses did not otherwise preclude assisting in his defense.

**2. Evidence— lay opinion—defendant's body language— schizophrenic**

The trial court did not err in a kidnapping and rape prosecution by excluding a statement from one of the victims that defendant's body language was abnormal, reminded her of a schizophrenic personality, and made her uneasy. Defense counsel later elicited the identical statement during direct examination of another witness.

**3. Kidnapping— lack of consent—failure to release in safe place—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss or reduce a first-degree kidnapping charge based on insufficient evidence that the victims did not consent and on release in a safe place where defendant ordered the victims into the woods at gunpoint, bound their hands and wrapped their faces with duct tape, repeatedly threatened to kill them and left them bound and gagged in the woods at night.

Appeal by defendant from judgments entered 1 May 2001 by Judge A. Leon Stanback in Orange County Superior Court. Heard in the Court of Appeals 13 August 2002.

**STATE v. PRATT**

[152 N.C. App. 694 (2002)]

*Attorney General Roy Cooper, by Assistant Attorney General Jeffrey R. Edwards, for the State.*

*Leonard Law Firm, by Robert K. Leonard, for defendant appellant.*

TIMMONS-GOODSON, Judge.

On 1 May 2001, a jury found Robert Warren Pratt ("defendant") guilty of one count of first-degree rape, two counts of first-degree sexual offense, two counts of first-degree kidnapping, and one count of second-degree kidnapping. For the reasons stated herein, we find no error in the judgments of the trial court.

At trial, the State presented evidence tending to show the following: On the evening of 13 September 1995, Nyssa Matson ("Matson") and Todd Hinson ("Hinson") encountered defendant while walking their dogs on a trail at Duke Forest in Orange County, North Carolina. Defendant, armed with a gun and wearing dark glasses, a false beard and a wig, approached Hinson and Matson and demanded money. When they replied that they had no money, defendant ordered them into the woods, stating that, "If you resist me, I'll kill you."

As Hinson and Matson entered the woods, defendant approached a third individual, Charles Neuman ("Neuman"), who was also walking his dog. Defendant demanded money from Neuman, who attempted to give defendant his wallet. Defendant never took the proffered wallet, but instead ordered all three off the trail and into the forest. When they reached a level area in the woods, defendant told the victims to lie on their stomachs and place their hands behind their backs, whereupon he bound their hands and eyes with duct tape. Defendant repeatedly threatened that, "If you don't do what I tell you, I will kill you." Defendant then approached Matson and informed her that, "You have a choice. I can rape you or I'll kill you. Make a decision." After taping Matson's mouth, defendant removed her clothing and digitally penetrated her vagina. He also penetrated her vaginally with his penis and sodomized her several times.

Upon completing his assault on Matson, defendant informed the victims that, "Well, you've done what you were supposed to do, so I guess I'll let you live[,]" and departed. The victims thereafter freed themselves and summoned law enforcement. Defendant's palm prints were later identified on the duct tape collected from the scene, and DNA testing of the semen samples taken from Matson matched DNA samples taken from defendant.

STATE v. PRATT

[152 N.C. App. 694 (2002)]

On 26 March 2001, the court held a competency hearing to determine defendant's ability to stand trial. Dr. Robert Rollins, a forensic psychiatrist at Dorthea Dix Hospital, testified as an expert witness for the State. Dr. Rollins opined that, although defendant suffered from schizophrenia, he was nevertheless able to understand the nature and object of the proceedings against him and to assist in his own defense. Defendant presented two expert witnesses, forensic psychiatrist Dr. James Bellard, and forensic psychologist Dr. Christopher Norris. Dr. Bellard testified that, while defendant knew and understood the charges against him, his paranoid delusions prevented him from effectively assisting in a defense on his behalf. Specifically, Dr. Bellard explained that defendant believed himself to be cursed, and that anyone attempting to assist him would be hindered by this curse, and that therefore it was futile to provide names of witnesses who might testify on his behalf. Dr. Norris similarly testified that defendant suffered from paranoia and schizophrenia, but had no conclusive opinion as to whether defendant could assist in his own defense.

Upon hearing all of the evidence, the trial court found defendant competent to stand trial. On 1 May 2001, the jury found defendant guilty of all charges, whereupon the trial court sentenced him accordingly. From these judgments, defendant appeals.

Defendant presents three issues on appeal, arguing that the trial court erred in (1) finding defendant competent to stand trial; (2) excluding evidence that defendant was mentally unsound when he committed the crimes; and (3) denying defendant's motion to dismiss or, alternately, to lower the first-degree kidnapping charges to that of second-degree kidnapping. For the reasons stated herein, we find no error by the trial court.

[1] By his first assignment of error, defendant argues that the trial court erred when it found him competent to stand trial. Defendant asserts that the trial court's decision is unsupported by the evidence and the law concerning competency. We disagree.

Section 15A-1001(a) of the North Carolina General Statutes provides in pertinent part that

No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

N.C. Gen. Stat. § 15A-1001(a) (2001). The defendant bears the burden of persuasion regarding his competency, and the trial court's findings of fact, if supported by the evidence, are conclusive on appeal. *See State v. Baker*, 312 N.C. 34, 43, 320 S.E.2d 670, 677 (1984). "The test for capacity to stand trial is whether a defendant has capacity to comprehend his position, to understand the nature of the proceedings against him, to conduct his defense in a rational manner and to cooperate with his counsel . . . ." *State v. Jackson*, 302 N.C. 101, 104, 273 S.E.2d 666, 669 (1981). Evidence that a defendant suffers from mental illness is not dispositive on the issue of competency. *See State v. Cooper*, 286 N.C. 549, 566, 213 S.E.2d 305, 317 (1975); *State v. Reid*, 38 N.C. App. 547, 549, 248 S.E.2d 390, 392 (1978), *disc. review denied*, 296 N.C. 588, 254 S.E.2d 31 (1979).

In the instant case, all three experts testified that defendant understood the nature of the proceedings against him, despite his mental illness. Dr. Rollins further opined that defendant was capable of assisting in his own defense. Dr. Bellard testified that defendant's delusions impaired his ability to assist in his defense, in that defendant was "reluctant" and "emotionally [un]able" to provide his counsel with the names of potential witnesses. Dr. Bellard conceded that defendant was otherwise capable of providing such information, however, and that defendant's reluctance to provide names would not prevent his attorney from investigating potential witnesses. Moreover, the trial judge had the opportunity to personally observe defendant and draw independent conclusions regarding his capacity to proceed, the determination of which was within the trial court's discretion. *See Jackson*, 302 N.C. at 104, 273 S.E.2d at 669 (noting that the trial court is not required to adopt the psychiatric report of either the State or the defense, but may arrive at an independent conclusion). Finally, defendant was present in court for the hearing and for trial and did not disrupt the proceedings or interfere with his attorney's statements in any manner.

Defendant argues that the case of *State v. Reid*, cited *supra*, controls the instant case. We disagree. In *Reid*, the "State relied totally on the testimony and psychiatric report" of its expert witness, who stated that "he had no current opinion as to the defendant's capacity to proceed." *Id.* at 549, 248 S.E.2d at 392. This admission by the expert witness "left the State without any evidence to contest the defendant's motion[,]" or to properly support the trial court's determination that the defendant was competent to stand trial. *Id.* at 550, 248 S.E.2d at 392. Accordingly, this Court reversed the trial court.

In contrast to *Reid*, there was sufficient evidence in the instant case to support the trial court's decision, even disregarding the testimony of the State's expert witness. Defendant's own expert witnesses both testified that defendant knew of and understood the proceeding against him. Further, Dr. Bellard opined that defendant's mental illness prevented defendant from working effectively with counsel in that defendant "would be able to name witnesses but would be reluctant to do so because of his delusion that any witness would have been affected by the curse that he believes in." Dr. Norris had no conclusive opinion on the subject. The trial court could properly conclude, based on this and other evidence presented at the hearing, that defendant's mere reluctance to provide his counsel with the names of potential witnesses did not otherwise preclude defendant from assisting in his own defense. ·

Our Supreme Court has noted that

a defendant does not have to be at the highest stage of mental alertness to be competent to be tried. So long as a defendant can confer with his or her attorney so that the attorney may interpose any available defenses for him or her, the defendant is able to assist his or her defense in a rational manner.

*State v. Shytle*, 323 N.C. 684, 689, 374 S.E.2d 573, 575 (1989). There was evidence in the case at bar from which the court could find that defendant was able to assist in his defense in a rational manner, and we perceive no abuse of discretion by the trial court in concluding that defendant was competent to stand trial. We therefore overrule this assignment of error.

**[2]** By his second assignment of error, defendant argues that the trial court erred by excluding from evidence a statement given by Matson to law enforcement officers. Specifically, Matson told officers that, "[w]hen [defendant] began walking toward them, she immediately thought that his body language was abnormal. It reminded her of a schizophrenic type of personality and it made her uneasy." While Matson was on the stand, the State objected to such evidence, arguing that Matson's assessment of defendant's mental condition was not within the purview of lay opinion and was thus inadmissible. After argument from both sides, the trial court sustained the State's objections. Defendant now argues that Matson's statement was relevant evidence tending to show that defendant was legally insane when he committed the acts for which he was tried, and that the exclusion of

her statement constitutes reversible error. Defendant's argument is wholly without merit.

Although the trial court initially excluded Matson's statement from evidence, the trial transcript reveals that defense counsel later elicited the identical statement made by Matson during direct examination of another witness. Because the evidence which defendant asserts was relevant and improperly excluded was, in fact, before the jury, defendant can show no prejudice arising from this alleged error. We therefore overrule defendant's second assignment of error.

[3] In his third assignment of error, defendant argues that the trial court erred when it failed to dismiss the charge of first-degree kidnapping as to the third victim, Neuman. Defendant contends that there was no evidence that Neuman did not consent to being restrained or moved. Alternatively, defendant argues that the trial court erred by declining to reduce the charge to second-degree kidnapping, because Hinson and Neuman were released in a safe place. We disagree.

When considering a motion to dismiss, the trial court determines whether there is substantial evidence of each essential element of the offense charged and whether the defendant is the perpetrator of the offense. *See State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The trial court must consider the evidence in the light most favorable to the State, granting the State the benefit of every reasonable inference to be drawn therefrom. *See State v. Patterson*, 335 N.C. 437, 450, 439 S.E.2d 578, 585 (1994). Where the State presents such substantial evidence of every element, the motion to dismiss is properly denied. *See State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

Under section 14-39 of the North Carolina General Statutes, any person who, unlawfully and without consent, confines, restrains, or removes from one place to another any other person is guilty of kidnapping if such confinement, restraint or removal is for one of several purposes outlined in the statute, including "[f]acilitating the commission of any felony" and "terrorizing the person so confined[.]" N.C. Gen. Stat. § 14-39(a)(2),(3) (2001). To prove the crime of kidnapping, the State must show an unlawful, nonconsensual restraint, confinement or removal from one place to another for the purpose of committing or facilitating the commission of one of the statutorily

enumerated acts. *See State v. Thompson*, 306 N.C. 526, 532, 294 S.E.2d 314, 318 (1982). There are two degrees of kidnapping in North Carolina:

> If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C. Gen. Stat. § 14-39(b). It should be noted that section 14-39(b) "implies a conscious, willful action on the part of the defendant to assure that his victim is released in a place of safety." *State v. Jerrett*, 309 N.C. 239, 262, 307 S.E.2d 339, 351 (1983).

Ample evidence before the trial court indicated that Neuman and Hinson were confined and restrained against their will. Defendant ordered both men into the woods at gunpoint, where he bound their hands and wrapped their faces with duct tape. Defendant repeatedly threatened to kill the men if they did not comply with his demands. We conclude that there was sufficient evidence that Neuman and Hinson were unlawfully confined, restrained and removed from one place to another without consent. *See State v. Owen*, 24 N.C. App. 598, 603, 211 S.E.2d 830, 834 (stating that "the removal of the victim only a few feet could be sufficient to constitute kidnapping"), *cert. denied*, 287 N.C. 263, 214 S.E.2d 435 (1975).

Furthermore, there was evidence before the trial court to indicate that defendant did not leave the victims in a safe place. On the contrary, defendant left the victims bound and gagged in the woods at nighttime. We therefore hold that the trial court did not err in denying defendant's motion to dismiss or to reduce the charge of first-degree kidnapping. Defendant's third assignment of error is overruled.

For the reasons stated above, we hold that the trial court did not err in finding defendant competent to stand trial and in denying defendant's motion to dismiss the charges of first-degree kidnapping.

No error.

Judges GREENE and HUNTER concur.