STATE OF NORTH CAROLINA v. TANNA BARNARD SAKOBIE

No. COA02-677

(Filed 15 April 2003)

**1. Kidnapping— release in a safe place—prosecutor's argument**

A prosecutor's argument in a kidnapping prosecution was not so grossly improper as to warrant the trial court intervening ex mero motu where the prosecutor argued that the only safe place to leave a child is with his mother or with someone with a duty of

care. This statement was a small part of the prosecutor's argument about the element of failing to release the victim in a safe place, the State emphasized that the challenged statement was the State's opinion, and the trial court did not have a clearly defined standard with which to compare the prosecutor's statement.

## 2. Kidnapping— release in a safe place—sufficiency of evidence

There was sufficient evidence that a child who had been kidnapped was not released in a safe place where the five-year-old boy was released on a cold night in an isolated, rural, wooded area unfamiliar to him with a dog barking at the him. Although defendant told the child that his mother would be inside, all reasonable inferences are that defendant knew she would not be; although defendant claimed that she knew the occupants of the trailer, they denied knowing her; and it is not clear the defendant waited to identify the occupants of the trailer before pulling away.

## 3. Larceny— motor vehicle—intent to deprive of possession—sufficiency of evidence

There was sufficient evidence that a larceny defendant intended to deprive her victim of possession of the victim's vehicle where defendant stole the vehicle from a convenience store parking lot at 9:00 p.m.; defendant drove the car until she was stopped at 2:45 a.m.; she had just driven past the place where she stole the vehicle when she was stopped; defendant did not give any indication at any time that she intended to return the vehicle; and defendant continued in possession of the vehicle even after she released the victim's child, who was in the car when defendant drove it away.

Appeal by defendant from judgments entered 31 January 2002 by Judge William C. Gore, Jr. in Superior Court, Cumberland County. Heard in the Court of Appeals 13 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Sueanna P. Sumpter, for the State.*

*Leslie C. Rawls for defendant-appellant.*

STATE v. SAKOBIE

[157 N.C. App. 275 (2003)]

McGEE, Judge.

Tanna Barnard Sakobie (defendant) was convicted of first degree kidnapping, larceny of a motor vehicle, and possession of a stolen automobile. The trial court determined that defendant had a prior record level of III. The trial court arrested judgment as to the charge of possession of a stolen vehicle. The trial court sentenced defendant to a minimum of 95 months to a maximum of 125 months active imprisonment for first degree kidnapping. The trial court sentenced defendant to a minimum of 10 months and to a maximum of 12 months suspended with 24 months of supervised probation for the larceny of a motor vehicle, to run consecutively from the first degree kidnapping sentence. Defendant appeals.

The evidence presented by the State at trial tended to show that on the evening of 4 October 2000, Joi Rivers (Rivers) drove to the Quick Stop convenience store in Hope Mills, North Carolina in her Chevrolet Cavalier to purchase soft drinks. Rivers' five-year-old son (the child) was with Rivers in the vehicle. When Rivers pulled up to the Quick Stop, she left the child in the front seat of the vehicle with the engine running. While Rivers was inside the Quick Stop, a woman, later identified as defendant, got into River's vehicle and drove away with the child still in the vehicle. When Rivers reached the counter to pay for her purchases, she did not see her vehicle outside. Rivers ran outside into the parking lot, saw that her vehicle and the child were gone, and began to scream and cry. Rivers went back into the Quick Stop and the store clerk called the police.

As defendant pulled out of the Quick Stop parking lot she almost caused a collision. Defendant drove approximately six and a half miles to a second convenience store, the Pit Stop, in Hope Mills, arriving around 10:30 p.m. Defendant got out of the vehicle, pulled the child out of the vehicle, and took him into the Pit Stop with her. Defendant told the child to stand at the counter and not say a word. The child remained at the counter, crying, while defendant purchased a forty-ounce bottle of beer. Defendant then grabbed the child by the arm and pulled him back out of the Pit Stop.

Defendant drove the child to a trailer, where she left him in the vehicle while she got a bag from the occupants of the trailer. Defendant then drove 12.7 miles into the countryside to the home of defendant's acquaintance, Robert Johnson (Johnson). Johnson's son, Robert "Shakeel" Johnson, and Johnson's cousin, Sarah Pennick, were also living at the home. Several other people were also on the

premises when defendant arrived. Defendant had a conversation with some of these people and a man struck her. The child was crying and told Johnson that he wanted to go back to the store where his mother was. However, defendant went inside the house to drink wine, leaving the child outside in the car for at least five to ten minutes. When defendant came out of the house, Johnson said he would accompany defendant to return the child to the child's mother. However, defendant did not accept Johnson's offer and drove away with the child.

Around midnight, defendant drove approximately 3.7 miles to a trailer where Vicky Ray (Vicky) and Jerome Leak (Jerome) lived. The trailer was in a rural area, with only one other trailer behind it, and a house across the road. The trailer was approximately 12.6 miles from the Quick Stop. There were lights on in the trailer. Defendant stopped about twenty feet from the backdoor of the trailer and told the child his mother was inside. The child responded that his mother did not go to trailers; however, defendant pushed him out of the car. The child heard a dog barking and went to the back door of the trailer and knocked. Defendant drove away while the child was knocking at the door.

Vicky answered the door and found the child standing there. Vicky saw a car turning onto the main road. The child kept saying that he wanted his mother, so Vicky told him to come in because it was cold. Vicky did not own a telephone or a car and there was no telephone within miles of the trailer. Vicky put the child to bed on a couch and told him that she would try and find a way to return him to his mother in the morning. Defendant, after leaving the child at Vicky and Jerome's trailer, returned to Johnson's residence to have a few more drinks. Defendant later left with Larry Johnson, Robert Johnson's brother.

At approximately 2:45 a.m., Officer Garrett Gwin of the Hope Mills Police Department saw defendant driving Rivers' vehicle and stopped defendant. Defendant was placed in police custody. Officer Gwin determined the child was not in the vehicle, and an extensive search for the child began, involving several officers and a helicopter. Defendant initially led the officers to many irrelevant locations in the search for the child. However, after about an hour, an officer became angry and told defendant he was going to take her to jail, to which defendant responded by leading the officers to Vicky and Jerome's trailer. The officers located the child in the trailer and returned him to Rivers.

Defendant's witness, Dewey Jackson (Jackson), testified that he and defendant lived together between 1996 and June of 2000. Jackson testified that he was acquainted with Vicky and Jerome. He testified that his car was stolen in February of 2000, and that James Baldwin (Baldwin) and Vicky's niece were involved. Baldwin and Vicky's niece had previously lived with Vicky and Jerome and had left their baby with Vicky and Jerome. Jackson testified that Vicky had taken him to various locations in search of her niece and Baldwin. He also testified that he and defendant had occasionally taken Vicky to pay her rent and to get groceries, and that they once drank beer in Vicky's trailer. However, Vicky testified at trial that she was not acquainted with defendant. Jerome also testified that he did not recognize defendant. Further facts will be set out below as necessary.

Defendant failed to put forth an argument in support of assignments of error 1, 2, 3, 4, 6, and 7. These assignments of error are therefore deemed abandoned. N.C.R. App. P. 28(b)(6).

I.

[1] Defendant assigns as plain error the trial court's allowing the State to argue that, for the purposes of first degree kidnapping, the only safe place to leave a child is with his parent or with someone who has a duty of care, and by failing to take adequate steps to correct the misstatement. We note that where a defendant has failed to object at trial to a prosecutor's closing argument but attempts to challenge the argument on appeal, the standard of review is gross impropriety, rather than plain error. *State v. Thomas*, 350 N.C. 315, 360-61, 514 S.E.2d 486, 514, *cert. denied*, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999). We are therefore required to determine whether the prosecutor's jury argument was so grossly improper as to warrant the trial court's intervention *ex mero motu. State v. Cummings*, 352 N.C. 600, 621, 536 S.E.2d 36, 52 (2000), *cert. denied*, 532 U.S. 997, 151 L. Ed. 2d 286 (2001). Our Supreme Court recently summarized:

> "Under this standard, '[o]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken.' *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996). '[D]efendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair.' "

*State v. Davis*, 349 N.C. [1,] 23, 506 S.E.2d [455,] 467 [(1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999)].

*State v. Nicholson*, 355 N.C. 1, 41-42, 558 S.E.2d 109, 137, *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002) (quoting *State v. Anthony*, 354 N.C. 372, 427-28, 555 S.E.2d 557, 592 (2001), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002)).

Defendant challenges the prosecutor's statement to the jury that defendant refused to take the child to his mother, "the only place, the [S]tate submits, that that child was safe or to someone that had a duty of care." If such a statement stood in isolation as the only explanation of the element of failure to release a victim in a safe place, such a statement could arguably be classified as "an extreme impropriety on the part of the prosecutor." However, the prosecutor's statement quoted above was just a small part of the argument she made concerning the element of failure to release the victim in a safe place, the rest of which defendant does not challenge.

The prosecutor several times foreshadowed how the judge would instruct the jury in relation to that portion of the charge; however, the prosecutor did not do so as to the statement defendant now challenges. In fact, the State emphasized that the challenged statement was the State's opinion of what would have been a safe place in the present case by using the language, "the [S]tate submits."

The General Assembly has not provided a definition or guidance to the courts in defining the term, "safe place." *See* N.C. Gen. Stat. § 14-39 (2001). Nor do our pattern jury instructions include such a definition. *See* N.C. Pattern Jury Instructions for Criminal Cases § 210.20. Further, the cases that have focused on whether or not the release of a victim was in a safe place have been decided by our Courts on a case-by-case approach, relying on the particular facts of each case. *See State v. Heatwole*, 333 N.C. 156, 161, 423 S.E.2d 735, 738 (1992); *State v. Sutcliff*, 322 N.C. 85, 89, 366 S.E.2d 476, 479 (1988); *State v. Pratt*, 306 N.C. 673, 682-83, 295 S.E.2d 462, 468 (1982); *State v. Pratt*, 152 N.C. App. 694, 700, 568 S.E.2d 276, 280 (2002); *State v. White*, 127 N.C. App. 565, 573, 492 S.E.2d 48, 53 (1997); *State v. Smith*, 110 N.C. App. 119, 137, 429 S.E.2d 425, 434, *aff'd per curiam*, 335 N.C. 162, 435 S.E.2d 770 (1993). The trial court therefore did not have a clearly defined standard with which to compare the prosecutor's statement. While the challenged statement may have been inappropriate, we do not agree that the statement rose to the level of an "extreme impropriety on the part of the prosecutor" that

"so infected the trial with unfairness that [it] rendered the conviction fundamentally unfair." *Nicholson*, 355 N.C. at 41, 558 S.E.2d at 137 (citations omitted). *See also State v. Haselden*, 357 N.C. 1, 22, 577 S.E.2d 594, 608 (2003) ("defendant must show that the prosecutor's argument 'so infected the trial with unfairness as to render the resulting conviction a denial of due process.' ") (citations omitted). Therefore, we hold that the trial court did not err in failing to correct, on its own motion, the prosecutor's challenged statement in her closing argument. This assignment of error is overruled.

## II.

Defendant also assigns as error the trial court's denial of defendant's motion to dismiss. Defendant argues the evidence was insufficient to support the charges of first degree kidnapping and larceny of a motor vehicle, even taken in the light most favorable to the State. The trial court did not err in refusing to dismiss either of these charges.

When reviewing a defendant's motion to dismiss for insufficiency of the evidence, "the evidence must be considered in a light most favorable to the State and the State must be given the benefit of every reasonable inference arising therefrom." *State v. Davis*, 97 N.C. App. 259, 264, 388 S.E.2d 201, 204, *aff'd per curiam*, 327 N.C. 467, 396 S.E.2d 324 (1990) (citations omitted). We must determine "whether there is substantial evidence of each essential element of the crime charged and that the defendant committed it." *State v. Damon*, 78 N.C. App. 421, 422, 337 S.E.2d 170, 170 (1985) (citing *State v. Riddle*, 300 N.C. 744, 746, 268 S.E.2d 80, 81 (1980)).

## A.

[2] Defendant in the present case was charged with first degree kidnapping, based on the unlawful confinement, restraint, or removal of the child without consent, for the purpose of facilitating the commission of a felony, being larceny of a motor vehicle, and the failure of defendant to release the child in a safe place. *See* N.C.G.S. § 14-39. It is the State's burden to prove the applicable elements of first degree kidnapping, including, in this case, that defendant failed to release the child in a safe place. *State v. Corley*, 310 N.C. 40, 55, 311 S.E.2d 540, 549 (1984). Defendant specifically argues that the State did not present sufficient evidence that defendant failed to release the child in a safe place, and thus the charge of second degree kidnapping should have been submitted to the jury, instead of the charge of first degree kidnapping.

We again note that the General Assembly has neither defined nor given guidance as to the meaning of the term "safe place" in relation to the offense of first degree kidnapping. *See* N.C.G.S. § 14-39. Further, our case law in North Carolina has not set out any test or rule for determining whether a release was in a "safe place." Several of the cases that have addressed the question of whether the defendant released the victim in a safe place have centered on whether there was a voluntary release by the defendant. *See Heatwole*, 333 N.C. at 161, 423 S.E.2d at 738 (holding that releasing a victim when the kidnapper is aware he is cornered and outnumbered by law enforcement officials is not "voluntary"); *State v. Jerrett*, 309 N.C. 239, 263, 307 S.E.2d 339, 352 (1983) (holding the evidence sufficient to permit the jury to infer the victim escaped from the defendant at a convenience store, as opposed to being released in a safe place); *State v. Parker*, 143 N.C. App. 680, 688, 550 S.E.2d 174, 178-79 (2001) (finding no evidence the defendants voluntarily released the victims in a safe place where the evidence showed that the defendants fled after shooting one victim and chasing another victim); *State v. Raynor*, 128 N.C. App. 244, 251, 495 S.E.2d 176, 180 (1998) (holding the evidence supported the inference that the victim was not released in a safe place where the victim overpowered the defendants and effected his own escape). Other cases, which do address whether a place is safe or not, have not provided any clear standard to apply, taking a case-by-case approach. *See Heatwole*, 333 N.C. at 161, 423 S.E.2d at 738 (holding, *inter alia*, that sending a victim out into the focal point of law enforcement officers' weapons is not a safe place); *Sutcliff*, 322 N.C. at 89, 366 S.E.2d at 479 (permitting the inference that the victim was not released in a safe place where the victim, who was new to the area and disoriented, was released at approximately 5:00 a.m. on a mid-January morning at an intersection a mile from a shopping mall, with no source of protection until after she reached the shopping mall); *Pratt*, 306 N.C. at 682-83, 295 S.E.2d at 468 (holding the evidence supported a finding that the handicapped victim was not in a safe place where the victim was tied and undressed in the wintertime and left in an unfamiliar area); *Pratt*, 152 N.C. App. at 700, 568 S.E.2d at 280 (stating that there was evidence before the trial court that the victims were not left in a safe place when they were left bound and gagged in the woods at night); *White*, 127 N.C. App. at 573, 492 S.E.2d at 53 (holding the evidence established the victim was released in a safe place when the victim was taken to a motel near a major shopping center in the middle of the afternoon, was voluntarily dropped off with change to make a phone call, and received assistance from

hotel employees in the office); *Smith*, 110 N.C. App. at 137, 429 S.E.2d at 434 (holding sufficient evidence existed that the victim was not released in a safe place where the victim was left tied to a tree in a damp wooded area, forty-five feet off a dirt road, and ninety-three feet down a path).

In the present case, defendant did voluntarily release the child behind the trailer where Vicky and Jerome lived, telling him to go knock on the door of the trailer because his mother would be inside. Defendant had no knowledge that the child's mother would be inside, and based on the record, all reasonable inferences would indicate defendant knew the child's mother was not in the trailer. The evidence shows that the five-year old child was released in the middle of the night, in an isolated rural, wooded area the child was unfamiliar with. It was a cold evening, a dog was barking at the child, and defendant had pushed him out of the vehicle into this foreign environment.

Defendant argues that she knew Vicky and Jerome, the occupants of the trailer, and therefore the release of the child was in a safe place. Vicky and Jerome both testified that they did not know defendant. Defendant's alleged knowledge of the occupants was questionable at best, and taken in a light most favorable to the State, fails to establish that the child was released in a safe place. Further, it is not clear that defendant even waited to see if Vicky and Jerome were indeed the occupants of the trailer before pulling away and leaving the child by the trailer. Taken in a light most favorable to the State, there was substantial evidence that the child was not released in a safe place. Based on these facts we hold that the trial court did not err in submitting the charge of first degree kidnapping to the jury.

B.

[3] In order to prove larceny of a motor vehicle, the State must show that defendant "(1) took the [motor vehicle] of another; (2) carried it away; (3) without the owner's consent, and (4) with the intent to deprive the owner of his [motor vehicle] permanently." *State v. Perry*, 305 N.C. 225, 235 n.7, 287 S.E.2d 810, 816 n.7 (1982). On appeal defendant contends that the State presented insufficient evidence of the fourth element, that defendant intended to deprive Rivers of her vehicle permanently. We reject this argument.

The evidence taken in a light most favorable to the State, *Davis*, 97 N.C. App. at 264, 388 S.E.2d at 204 (citations omitted), tended to

show that defendant stole River's vehicle from the Quick Stop parking lot at approximately 9:00 p.m. on 4 October 2002. She drove the vehicle for her personal use all through the night until she was stopped at approximately 2:45 a.m. on 5 October 2000 by law enforcement officers. When defendant was first located by law enforcement officers at approximately 2:45 a.m, she had just driven past the location where she had stolen the automobile. At no time did defendant give any indication that she intended to return Rivers' vehicle. In fact, defendant did relinquish possession of Rivers' child, who had been in the vehicle when defendant stole it, but continued in her possession of the stolen vehicle. The evidence is more than sufficient to establish that defendant intended to permanently deprive Rivers of the possession of her vehicle. There is substantial evidence of each element of larceny of a motor vehicle. *See Damon*, 78 N.C. App. at 422, 337 S.E.2d at 170 (citation omitted). This assignment of error is overruled.

No error.

Judges HUDSON and STEELMAN concur.