STATE OF NORTH CAROLINA v. ABDUL JERMAINE CORBETT

No. COA03-1494

(Filed 18 January 2005)

**1. Kidnapping— first-degree—requested instruction—safe place**

The trial court did not err in a first-degree kidnapping case by granting the State's request for a jury instruction relating to whether the victim was released in a safe place, because: (1) the testimony was sufficient to support a jury's determination that

STATE v. CORBETT

[168 N.C. App. 117 (2005)]

the victim's release was involuntary and into the focal point of at least one officer's weapon; (2) the instruction did not conclude that the victim was released in an unsafe place, but at all times ensured that it was still upon the jury to find the facts surrounding the release beyond a reasonable doubt; and (3) being in the line of fire of one weapon falls within the legislature's intent of what is not a safe place under N.C.G.S. § 14-39(b).

**2. Evidence— arrest warrant—relevancy**

The trial court did not err in a first-degree kidnapping case by refusing to admit the arrest warrant containing defendant's initial charge of second-degree kidnapping, because: (1) the allegations of the arrest warrant do not necessarily frame what is relevant to a particular criminal case tried upon an indictment; (2) the arrest warrant was outside the scope of matters relevant to whether the victim had been released in a safe place; and (3) if relevant at all, the warrant was corroborative of the testimony that the victim at some point was placed in the line of fire and there was a likelihood that she was released in an unsafe place.

Judge TIMMONS-GOODSON dissenting.

Appeal by defendant from judgment entered 1 July 2003 by Judge A. Leon Stanback in Wake County Superior Court. Heard in the Court of Appeals 14 September 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Susan R. Lundberg, for the State.*

*Massengale & Ozer, by Marilyn G. Ozer, for defendant appellant.*

McCULLOUGH, Judge.

Defendant appeals from his judgment and sentence imposed following a jury's verdict finding him guilty of the charge of first-degree kidnapping. Additionally, defendant was charged with and pled guilty to common law robbery for which the trial court entered judgment.

The State's evidence tended to show the following: On the night of 9 March 2003, Reginald Harris ("Mr. Harris") was working the closing shift of the Blockbuster Video Store ("video store") in Ashton Square off Raleigh's Capital Boulevard. Mr. Harris was a manager of the store and was working with a fellow employee, Rebecca Carman

("Ms. Carman"). Defendant was in the store near closing time, and was observed by Mr. Harris as suspiciously walking back and forth, from one side of the store to the other. Mr. Harris called the police and requested an officer come by the store.

Mr. Harris then announced that the video store would be closing shortly and walked to lock the front door of the store so no more patrons could enter. At that point defendant was the only patron left in the store. When Mr. Harris entered the alcove area between the video store's inside and outside doors, he turned and observed defendant grab Ms. Carman by her waist. Defendant pulled her off the step stool she was working from, and gripping her by the neck, shoved a blunt, hard object into her back. Defendant gestured to Mr. Harris to come back into the video store, which he did leaving the front door unlocked. Mr. Harris could not discern at any point if it was a knife or a gun defendant had at Ms. Carman's back. Defendant forced Ms. Carman to the front of the store and pushed her down behind the counter area so that she could not be seen from the front door. Defendant demanded Mr. Harris give him the money in the store's safe and cash register. The safe was time delayed and Mr. Harris informed defendant it would take approximately 10 minutes to open. Defendant told Mr. Harris to sit down, relax, and read something.

Soon thereafter, Raleigh Police Officer David Dufault ("Officer Dufault") entered the video store. Officer Dufault immediately saw defendant with Ms. Carman in front of him and behind the counter on the floor. As he entered the store, he unsnapped the holster of his weapon, and touching it with his hand, told defendant to put his weapon down and to free Ms. Carman. Defendant pulled Ms. Carman up by the neck and placed her in between him and Officer Dufault, and began threatening he would "blow her way." Officer Dufault tried continually to calm defendant, but defendant kept threatening Ms. Carman's life and began moving himself, with her as his shield, towards the front of the video store. He told Mr. Harris to get Officer Dufault's gun by the count of ten, or he would shoot Ms. Carman.

When defendant reached the front door, he backed himself and Ms. Carman into the one-way door attempting to open it from the wrong direction. Defendant demanded someone open the front door and Mr. Harris came and assisted him. It was at approximately this point when Raleigh Police Officer Jeremy Garkalins ("Officer Garkalins") drove up to the video store. Officer Garkalins stepped out of his squad car, and standing behind it, drew his sidearm. Defendant

saw Officer Garkalins arrive and then threatened to kill everyone at the scene.

Believing defendant had reached his "boiling point," Officer Dufault drew his sidearm, and pointed it such that defendant and Ms. Carman were in his line of fire. Defendant immediately released his grip on Ms. Carman, allowing her to drop to her knees. Defendant threw his weapon to the ground. Officer Dufault instructed defendant to get down on the ground. Defendant laid on his stomach on the floor and Officer Dufault and Officer Garkalins arrested him.

Defendant put on no evidence. The jury returned a guilty verdict.

Based on his prior record level of III, the Court gave defendant consecutive sentences of 10 to 12 months pursuant to his guilty plea of common law robbery, and 116 to 149 months pursuant to the jury's verdict of finding him guilty of first-degree kidnapping.

Defendant now raises two issues on appeal relating to the charge of kidnapping: first, that the trial court erred in granting the State's request for a jury instruction relating to whether Ms. Carman was released in a safe place; and second, that the court erred in not allowing to be placed into evidence, or to be referred to in defendant's closing argument, the arrest warrant initially charging defendant for second-degree kidnapping. For the reasons stated herein, we overrule defendant's assignments of error.

## Jury Instruction on First-Degree Kidnapping

[1] Defendant first argues that the court erred in granting the State's request regarding the jury instruction on the "safe place" element of first-degree kidnapping. Based on the evidence presented in this case, we find the court did not err in granting the State's requested instruction.

N.C. Gen. Stat. § 14-39(b) (2003) states that:

There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

STATE v. CORBETT

[168 N.C. App. 117 (2005)]

The legislature has not defined by statute what is or is not a "safe place." Nor is there any mention in the Criminal Pattern Jury Instructions as to the parameters of a "safe place." Therefore, the determination of whether a kidnapping victim was released in a safe place has been decided on a case-by-case basis. *See State v. Sakobie,* 157 N.C. App. 275, 280-81, 579 S.E.2d 125, 129 (2003) (Releasing the victim in an isolated wooded area with which the victim was not familiar was not a "safe place"); *State v. Heatwole,* 333 N.C. 156, 161, 423 S.E.2d 735, 738 (1992) (releasing the victim in the focal point of law enforcement weapons was not a "safe place"); *State v. Pratt,* 306 N.C. 673, 682-83, 295 S.E.2d 462, 468 (1982) (releasing a victim bound, undressed, in the wintertime, in an area unfamiliar to him, and in view of his obvious handicap that he has no hands, he was not released in a "safe place"); *State v. Pratt,* 152 N.C. App. 694, 700, 568 S.E.2d 276, 280 (2002), *cert. denied, appeal dismissed,* 357 N.C. 168, 581 S.E.2d 442 (2003) (victim left bound and gagged in the woods at nighttime was not a "safe place"); *State v. Smith,* 110 N.C. App. 119, 137, 429 S.E.2d 425, 434, *aff'd per curiam,* 335 N.C. 162, 435 S.E.2d 770 (1993) (victim left tied to a tree in a wooded area off a dirt road where snakes were later seen was not a "safe place").

In *Heatwole,* our Supreme Court held the following to be a sufficient factual basis to support a guilty plea of first-degree kidnapping:

> [R]eleasing a kidnap victim when the kidnapper is aware he is cornered and outnumbered by law enforcement officials is not "voluntary" and that sending her out into the focal point of their weapons is not a "safe place."

333 N.C. 156, 161, 423 S.E.2d 735, 738 (1992). The victim in *Heatwole* was defendant's former girlfriend. She was kidnapped and taken to the defendant's father's house. *Heatwole,* 333 N.C. at 159, 423 S.E.2d at 737-38. There the defendant killed the security guard of the subdivision in which the house was located, and killed his stepmother. *Id.* Ten officers surrounded the home with weapons drawn, and the defendant released the victim sending her out of the house and into the focal point of the weapons. *Id.*

In the case at bar, defendant was charged with first-degree kidnapping based on the evidence that defendant did not release Ms. Carman, his victim, in a safe place. The basis of the State's theory was pursuant to *Heatwole,* that the evidence supported an instruction that

defendant released the victim into the focal point of the arresting officers' drawn weapons, and thus not a "safe place." The instruction consisted of the following:

> And fifth, that the person was not released by the Defendant in a safe place. Now, release of a kidnap victim when the kidnapper is aware he is cornered and outnumbered by law enforcement officials is not voluntary, and sending the kidnap victim out into the focal point of the weapons of the police officers is not a safe place.

Defendant argues that this instruction denied him the presumption of innocence in that it is conclusive that Ms. Carman's release in this case was not in a "safe place." Defendant additionally argues the facts of his case do not warrant a *Heatwole* instruction, as the facts of *Heatwole* are of a different and much more heinous circumstance than those at bar. We do not agree with either contention.

In this case, defendant made Officer Dufault believe he had a gun in the victim's back. He threatened he would kill her and everyone else at the scene before ever going back to jail. Based upon this interpretation, Officer Dufault's testimony revealed that he drew his weapon on defendant and Ms. Carman when he believed the risk of hitting Ms. Carman, should he be required to shoot, was outweighed by the peril in which she was being held:

> A. . . . When he got into that space, he then proceeded to say he's going to count to three and he's going to kill her. At that time he says one, like he was counting. At that time, that's when I drew my weapon, because I figured, from the whole time from the very beginning when I first entered to then, he had gradually gotten angrier and angrier. And reason I drew my weapon when he said one, because I figured he's cornered now, he's outnumbered, because there's another officer here. I figured if he's going to do something, he's going to do something now, because he's beyond his boiling point.

On cross-examination, when asking to clarify when exactly defendant let go of the victim, Officer Dufault stated:

> A. She—he let her go once I had the weapon drawn on him, where she was still being held. I mean, he didn't let her go when I was drawing it, he only let her go when I had it pointed.

Officer Garkalin testified as to the following:

Q. So while you're setting up sight and you have your weapon drawn, but not pointed at him, but basically—

A. In the low ready.

Q. —Officer Dufault comes from this way and he ultimately pulls his weapon, at that point the Defendant surrenders; is that right?

A. Exactly.

We conclude that this testimony was sufficient to support a jury's determination that Ms. Carman's release was involuntary and into the focal point of at least one officer's weapon. It is thus sufficient to support an instruction under *Heatwole*. The court's instruction did not conclude Ms. Carman was released in an unsafe place. Rather, it provided that should the jury find the circumstances of the instruction as to the release of Ms. Carman to be in such place, such a release was not in a "safe place." At all times it was still upon the jury to find the facts of the circumstances surrounding the release beyond a reasonable doubt.

Lastly, we note that, while in this instance there was arguably only one officer's weapon endangering the life of Ms. Carman, we believe that being in the line of fire of one weapon falls well within the legislature's intent of what is not a "safe place" under N.C. Gen. Stat. § 14-39(b). Defendant's argument that there needs to be circumstances akin to having two prior homicides and ten officers' weapons drawn upon the kidnapping victim to warrant an instruction based on *Heatwole*, underestimates the threat of being placed in the potential path of even a single bullet.

This assignment of error is overruled.

**Evidence of Arrest Warrant**

[2] Next, defendant contends the trial court erred in refusing to admit the arrest warrant containing defendant's initial charge of second-degree kidnapping. We do not agree.

We have held that:

An arrest warrant issues upon probable cause that an offense has been committed and that the person to be arrested was the perpetrator. This does not mean, however, that a subsequent indictment must necessarily flow from or be framed within the

allegations of the arrest warrant. When a defendant is tried upon an indictment, for example, the validity of the arrest warrant has no effect upon the trial court's jurisdiction over the subject of the indictment.

*State v. Riggs,* 100 N.C. App. 149, 153, 394 S.E.2d 670, 672 (1990) (citation omitted), *disc. review denied,* 328 N.C. 96, 402 S.E.2d 425 (1991). Therefore, the allegations of the arrest warrant do not necessarily "frame" what is relevant to a particular criminal case tried upon an indictment.

In the case at bar, defendant was indicted for first-degree kidnapping on the theory that the victim was not released in a "safe place." This is the crime for which the State put on evidence in its case-in-chief, and defendant conceded all elements except whether or not the victim was released in a "safe place." During the cross-examination of Officer Dufault, the court denied defendant's attempt to admit evidence of the arrest warrant charging defendant with second-degree kidnapping. It is clear from the transcript the court believed the warrant had no relevance on the issue of defendant's guilt or whether Ms. Carman was released in a "safe place."

While " 'the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal.' " *Dunn v. Custer,* 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (quoting *State v. Wallace,* 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991); see N.C. Gen. Stat. § 8C-1, Rule 401 and Rule 403 (2003).

We agree with the court that the arrest warrant in this case was outside the scope of matters relevant to whether the victim had been released in a "safe place." Additionally, we note that the face of the warrant stated that the victim was a "hostage," and was used "as a shield in an attempt to facilitate the commission of an armed robbery." If of any relevance, the warrant is corroborative of the testimony that Ms. Carman at some point was placed in the line of fire, and there was a likelihood that she was released in an unsafe place.

This assignment of error is overruled.

Based upon thorough review of the transcript, record, and briefs, we find defendant received a fair trial free from reversible error.

No error.

Judge HUNTER concurs.

Judge TIMMONS-GOODSON dissents.

TIMMONS-GOODSON, Judge, dissenting.

Because I disagree with the majority's conclusion that the trial court did not err in instructing the jury, I respectfully dissent.

Our Supreme Court has previously concluded that "[e]lements of criminal offenses present questions of *fact* which must be resolved by the *jury* upon the State's proof of their existence beyond a reasonable doubt." *State v. Torain*, 316 N.C. 111, 119, 340 S.E.2d 465, 469 (emphasis in original), *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). "This principle prohibits the use of evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *State v. Locklear*, 331 N.C. 239, 244, 415 S.E.2d 726, 729 (1992). In the instant case, I conclude that the challenged portion of the trial court's instruction impermissibly relieved the State of its burden regarding an essential element of defendant's first-degree kidnapping charge—that the victim was not released in a safe place.

Although I recognize that a jury instruction does not relieve the State of its burden when it "merely state[s] the substantive law of this state[,]" *Id.* at 245, 415 S.E.2d at 729, I note that "the General Assembly has neither defined nor given guidance as to the meaning of the term 'safe place' in relation to the offense of first degree kidnapping[,]" and "our case law in North Carolina has not set out any test or rule for determining whether a release was in a 'safe place.' " *State v. Sakobie*, 157 N.C. App. 275, 282, 579 S.E.2d 125, 130 (2003) (citing N.C. Gen. Stat. § 14-39 (2003)). Thus, because our courts have "not [been] provided any clear standard to apply," we employ "a case-by-case approach" that relies on the particular facts of each case. *Id.* Despite our Supreme Court's "agree[ment]" with "the State's position" in *State v. Heatwole*, 333 N.C. 152, 161, 423 S.E.2d 735, 737 (1992), I conclude that the "case-by-case approach" has not yet pronounced a strict rule of law regarding whether a particular place is "safe" for the purposes of N.C. Gen. Stat. § 14-39(b).

In *Heatwole*, the defendant argued that the trial court lacked a sufficient factual basis to accept his guilty plea because there was

insufficient evidence that the victim had not been released in a safe place. The Supreme Court disagreed, concluding that "[i]nasumch as there was a factual basis for each element of the offense, there is no reason to upset [the] defendant's guilty plea to first-degree kidnapping[.]" 333 N.C. at 161, 423 S.E.2d at 738. I am not convinced that this statement amounts to a strict pronouncement that, as a matter of law, a defendant has failed to release a victim in a "safe place" where the defendant releases the victim unharmed, in the same place where the alleged kidnapping occurred, in plain view of police officers, and following the police officers' commands to do so. Instead, I believe it is "for the jury to resolve the conflicting inferences arising from this evidence." *State v. Jerrett*, 309 N.C. 239, 263, 307 S.E.2d 339, 352 (1983) (holding that, although the evidence presented a "close question" as to whether the defendant released the victim in a safe place, because the evidence was sufficient to permit the jury to reasonably infer that the victim escaped, was rescued by the presence and intervention of a police officer, or was released by the defendant in the presence of the police officer, the trial court did not err in submitting the issue of first-degree kidnapping to the jury). Therefore, because I conclude that the challenged portion of the trial court's instruction in the instant case relieved the State of its burden of proving that the victim was not released in a safe place, I would reverse defendant's conviction and order a new trial.